IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| HADEEL ABUYAMEEN, et al., | |
| Plaintiffs, | |
| v. | Case No. 24 C 227 |
| U.S. CITIZENSHIP AND IMMIGRATION SERVICES, | Hon. LaShonda A. Hunt |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Following Plaintiffs' voluntary dismissal of their case against Defendant U.S. Citizenship and Immigration Services ("USCIS" or "Defendant"), Plaintiff Hadeel Abuyameen ("Hadeel") filed an opposed petition for fees and costs pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d)(1)(B). (Dkt. 21).[1] For the reasons discussed below, Hadeel's petition is denied.

**BACKGROUND**

Hadeel and her siblings Nadeen Abuyameen ("Nadeen") and Adam Abuyameen ("Adam"), citizens of Jordan, brought this action seeking review of Defendant's (1) denial of Hadeel's application for naturalization and (2) unreasonable delay in adjudicating Nadeen's and Adam's applications for adjustment of status to lawful permanent resident. (Compl. at 1, ¶¶ 4-6, Dkt. 1).[2] Defendant had denied Hadeel's naturalization application on the ground that her father was not

---

[1] Only Hadeel brings the instant petition; her co-plaintiff siblings obtained relief before this Court took any action. *See* Dkt. 15 (conditional remand order dated 5/14/25 dismissing their claims as moot).

[2] Unless otherwise noted, page numbers in citations are the page number on the CM/ECF header of the filing, not the page number at the bottom of the page. Because the Complaint includes both unnumbered and numbered paragraphs, the Court cites to page numbers when information is not included in a numbered paragraph and paragraph numbers when information is included in a numbered paragraph.

lawfully admitted for permanent residence and thus ineligible to file an immigration visa petition on her behalf; therefore, Hadeel had been granted lawful permanent residence in error. (*Id.* at ¶ 17). Hadeel requested an administrative hearing on the denial and provided evidence in support of her father's status, but Defendant reaffirmed its decision. (*Id.* at ¶¶ 19-20). When Plaintiffs filed their complaint, Nadeen's and Adam's applications for adjustment of status had been pending for over 22 months. (*Id.* at ¶ 27). Consequently, Plaintiffs prayed for: (1) a *de novo* hearing on Hadeel's naturalization application and for the application to be granted after such hearing; (2) the Court to compel Defendant to issue decisions on Nadeen's and Adam's applications for adjustment of status within a reasonable time; (3) other relief the Court may deem just, lawful, and equitable. (*Id.* at 7).

Prior to any substantive action by the Court, the parties filed an agreed motion to remand to the agency which stated that Defendant "voluntarily completed the processing" for Nadeen and Adam, granted their applications for adjustment of status, and issued permanent resident cards to each of them." (Agreed Mot. to Remand at 1, Dkt. 13). All agreed that the claims of Nadeen and Adam were moot. (*Id.*). As to Hadeel's naturalization application, the parties agreed that it should be remanded back to the agency, because "Defendant ha[d] reconsidered the basis for its N-400 denial and agree[d] to vacate the previous denial and process [Hadeel] for a naturalization oath ceremony." (*Id.*). The motion further reported that "[t]he parties stipulate that, upon remand to USCIS, the agency will reopen the application, vacate the previous denial, and schedule a naturalization oath ceremony for [Hadeel] within sixty (60) days of the remand." (*Id.*).

Consequently, the Court granted the agreed motion to remand (Dkt. 14) and conditionally remanded Hadeel's application to USCIS "to vacate the previous denial, reopen and complete the necessary ministerial tasks remaining in the N-400 process, and schedule an oath ceremony." (Conditional Remand Order, Dkt. 15). The Court retained jurisdiction during the conditional

remand to enforce and allowed Hadeel to file a notice of reinstatement for the Court to then adjudicate the matter if Defendant failed to meet its obligations within 60 days of entry of that order. (*Id.*). Around six weeks later, Plaintiffs voluntarily dismissed the case.[3] (Dkt. 17). Hadeel subsequently sought fees and costs pursuant to the EAJA, which Defendant opposes.

## LEGAL STANDARD

It is well established that in the United States, "absent statute or enforceable contract, litigants pay their own attorneys' fees." *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 257 (1975); *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health and Hum. Res.*, 532 U.S. 598, 602 (2001) (citations omitted) ("Under this 'American Rule,' we follow 'a general practice of not awarding fees to a prevailing party absent explicit statutory authority.'"). However, the EAJA allows for collection of attorneys' fees by the prevailing party. It provides, in pertinent part:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). Stated another way, "[t]he EAJA provides that a district court may award attorney's fees where 1) the claimant is a 'prevailing party'; 2) the government's position was not substantially justified; 3) no 'special circumstances make an award unjust'; and 4) the fee application is submitted to the court within 30 days of final judgment and is supported by an

---

[3] As noted *supra* at fn.1, Nadeen's and Adam's claims had previously been dismissed as moot.

itemized statement. 28 U.S.C. § 2412(d)(1)(A), (B)[.]" *U.S. v. Hallmark Constr. Co.*, 200 F.3d 1076, 1079 (7th Cir. 2000).

## DISCUSSION

At issue here is whether Hadeel constitutes a prevailing party for purposes of the EAJA. "Prevailing party" is a legal term of art. *Buckhannon*, 532 U.S. at 603. "The term 'prevailing party' has a narrow legal definition that may seem counter-intuitive to one who believes the party who 'succeeds' is necessarily one who 'prevails.' As courts have made clear, 'a plaintiff must obtain formal judicial relief, and not merely 'success,' in order to be deemed a prevailing . . . party . . . . *Petersen v. Gibson*, 372 F.3d 862, 865 (7th Cir. 2004) (citations omitted). In other words, a party does not necessarily prevail simply because it achieves its desired outcome through litigation.

Notably, "[a] defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change. Our precedents thus counsel against holding that the term 'prevailing party' authorizes an award of attorney's fees *without* a corresponding alteration in the legal relationship of the parties." *Buckhannon*, 532 U.S. at 605 (emphasis in original). A prevailing party is one who has received some relief from the court, such as through a judgment on the merits or through a settlement agreement enforced through a consent decree. *Id.* at 603-04. The Seventh Circuit has explained that "[t]he relief requirement emphasizes the practical impact of the lawsuit, and the Supreme Court has repeatedly held that the relief must be real in order to qualify for fees. . . . [T]he Supreme Court has emphasized that the relief is actual when it changes the legal relationship between the parties." *Petersen*, 372 F.3d at 865.

Hadeel contends that the Court's conditional remand order "is sufficient to establish that [she] is the prevailing party." (Dkt. 21 at 3). The Court disagrees. While Hadeel got the result she

ultimately wanted—her naturalization application was granted—she did not achieve that success through the judicial relief necessary to confer upon her prevailing party status. Rather, it was through Defendant's voluntary conduct prior to any Court action. It may be true that, absent the filing of this lawsuit, Defendant would not have "had second thoughts and agreed it could not sustain the agency position in litigation." (*Id.* at 2). But, as noted *supra*, the Supreme Court has rejected the catalyst theory, and the fact remains that Defendant agreed to grant Hadeel's naturalization application absent any Court instruction to do so.

Put differently, nothing the Court did in this case changed the legal relationship between the parties. The agreed motion to remand informed the Court that Defendant had "reconsidered the basis for its N-400 denial and agree[d] to vacate the previous denial and process [Hadeel] for a naturalization ceremony" and that upon remand, Defendant would reopen her application, vacate the previous denial, and schedule the naturalization oath ceremony within 60 days of entry of a remand order. (Dkt. 13 at 1). In response, the Court entered a conditional remand order instructing Defendant to do exactly what it had *already voluntarily agreed to do*. (Dkt. 15 ("the Court hereby remands [Hadeel's application to USCIS] to vacate the previous denial, reopen and complete the necessary ministerial tasks remaining in the N-400 process, and schedule an oath ceremony.")).

Hadeel's argument that "the Court imposed certain conditions on USCIS" ignores the fact that the order tracked the conditions jointly proposed by the parties. (Reply Br. in Supp. of Pls.' Pet. for Fees and Costs at 1, Dkt. 25). Even down to the 60 day allotment of time for Defendant to resolve Hadeel's application, the Court acted entirely in accordance with terms voluntarily agreed upon by both sides. The remand order further provided that if Defendant did not follow through, Hadeel could file a notice of reinstatement "for the Court to *then* adjudicate this matter." (*Id.*

(emphasis added)). But Defendant did follow through, as evidenced by Plaintiffs' voluntary dismissal of this case, negating any need for adjudication in this Court at any time.

The legal authority Hadeel cites to support her argument is distinguishable from the facts of this case. For example, Hadeel relies upon cases involving agreed remands, including *Li v. Keisler*, 505 F.3d 913 (9th Cir. 2007) and *Al-Maleki v. Holder*, 558 F.3d 1200 (10th Cir. 2009). Aside from the fact that this Court is not bound by Ninth and Tenth Circuit decisions, the plaintiffs in both *Li* and *Al-Maleki* received the relief they explicitly sought from the court—remands to the respective agencies. *Li*, 505 F.3d at 917-18 (three plaintiffs' cases were consolidated in which each sought either reopened removal proceedings or a remand to the agency and "remand orders in all three petitions for review advanced the goals sought by petitioners, and constituted material alterations of the parties' legal relationships for purposes of *Buckhannon*."); *Al-Maleki*, 558 F.3d at 1203, 1206 (plaintiff sought "judgment that he was entitled to naturalization or, in the alternative, an order remanding the matter to USCIS with instructions to adjudicate his application within fifteen days" and was determined to be prevailing party after remand as court "granted [plaintiff] substantive relief on the merits of the claims raised in his [action].").  Unlike those cases, Hadeel, although achieving her goal of naturalization, did not receive the relief for which she prayed—a de novo hearing on her application for naturalization and for her application to be granted after that hearing.

Hadeel's other supporting authority fares no better. She cites to *Shalash v. Mukasey*, 576 F.Supp.2d 902 (N.D. Ill. 2008), but the procedural posture there was far different than this case. That court deemed the plaintiff a prevailing party after the case had been remanded to USCIS with orders to render a final decision on plaintiff's naturalization application, USCIS did not comply with the remand order, the plaintiff moved to reinstate his petition, and *only then* did USCIS finally

adjudicate the petition. *Id.* at 905, 909-910. Finally, *Pulatov v. USCIS*, 532 F.Supp.3d 575 (N.D. Ill. 2021), like *Li* and *Al-Maleki*, is a case where the plaintiff's requested relief included a writ of mandamus compelling defendant to adjudicate his naturalization application, which is the relief he received. *Pulatov*, 532 F.Supp.3d at 579. Hadeel contends Defendant's argument that the remand order did not provide her with the relief she sought is "splitting hairs in the extreme," given that she ultimately attained her goal of being naturalized. (Dkt. 25 at 4). While she may be correct that the Court's remand order ensured that she was naturalized, for the reasons already discussed, it did not do so with the "judicial *imprimatur*" required under *Buckhannon*. As a result, Hadeel was not a prevailing party in this litigation.

## CONCLUSION

For the foregoing reasons, Plaintiff Hadeel's petition for fees and costs is denied.

**DATED**: January 10, 2025          **ENTERED**:

LASHONDA A. HUNT
United States District Judge